**SO ORDERED.**

**SIGNED this 26th day of March, 2013.**



THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE



---

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| TOBACCO SQUARE LLC, | ) | Case No. 12-50856 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| | ) | |
| TOBACCO SQUARE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 12-06046 |
| | ) | |
| v. | ) | |
| | ) | |
| PUTNAM COUNTY BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Before the Court are cross motions for summary judgment, one filed by Putnam County Bank ("PCB") on January 25, 2013 ("PCB's Motion"), and the other filed by Tobacco Square LLC (the "Debtor") on January 25, 2013 (the "Debtor's Motion"). On July 27, 2012, the Debtor filed a complaint seeking to avoid the liens held by PCB in real and personal property and to recover these interests for the benefit of the estate. The Debtor's Motion contends that PCB's deed of trust fails to identify the underlying debt and that PCB has not perfected its security interest in personal

property.  PCB's Motion asserts that the underlying debt is specifically described in a related document and, furthermore, that it properly filed a fixture filing statement.  Upon consideration of the pleadings, and the evidence presented at the hearing held on March 7, 2013, and as stated on the record, and for the following reasons, the Court will grant PCB's Motion and deny the Debtor's Motion as to the deed of trust and will grant in part and deny in part both motions as to the personal property.

## I. FACTS

The Debtor owns twenty-six residential apartment units in a building located in Winston-Salem, North Carolina.  The Debtor also owns certain items of personal property associated with the apartments, including appliances (washers, dryers, refrigerators, stoves, dishwashers, microwaves and garbage disposals), individual heating and cooling components, benches and furniture, maintenance and building supplies, window treatments, lighting, window treatments, wall sconces, overhead lighting, and furnaces.

In order to fund the conversion of an old warehouse into condominiums, on May 11, 2007, the Debtor entered into a loan agreement with PCB under which it executed a deed of trust (the "Deed of Trust") granting PCB a security interest in the Debtor's real property in exchange for a $5,000,000.00 loan, evidenced by a promissory note (the "Note").  On July 28, 2008, PCB extended a second loan to the Debtor, in the amount of $500,000.00, evidenced by a second promissory note and a second deed of trust on the same property.  Both deeds of trust purported to grant PCB a security interest in the Debtor's personal property as well.  PCB recorded both deeds of trust with the Forsyth County Register of Deeds, and PCB recorded a fixture filing, but it did not file a UCC-1 financing statement with the North Carolina Secretary of State regarding the personal property.  On June 13, 2012, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code and

has been operating as a debtor-in-possession pursuant to Section 1107(a).

On July 27, 2012, the Debtor initiated this adversary proceeding by filling a complaint seeking to avoid PCB's Deed of Trust and its security interest in personal property. The first cause of action seeks to avoid the Deed of Trust pursuant to Section 544(a)(1), alleging that the Deed of Trust contains circuitous definitions of the terms "Indebtedness," "Note," and "Related Documents" and does not adequately identify the underlying obligation that it secures because the Note is not specifically identified on the first page.

The Deed of Trust gives a security interest to PCB for "(A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST." It defines "Indebtedness" as "all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents;" "Note" as "the note secured by this document is specifically identified on the first page of this document…;" and "Related Documents" as "all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness."

The Debtor's second cause of action alleges that PCB did not perfect its interest in the Debtor's personal property. Both deeds of trust define "Personal Property" as "all equipment, fixtures, and other articles of personal property now or hereafter owned by [the Debtor], and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for any of such property, and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property."

On August 10, 2012, PCB moved to dismiss the Debtor's complaint, and on October 26, 2012, the Court denied the motion to dismiss because, applying the Rule 12(b)(6) standard of review, the Court could not properly consider the Construction Loan Agreement. As a result, the Court held that the Deed of Trust, alone, did not identify the underlying debt with the required specificity and therefore, the Complaint stated a claim for relief. In its ruling, the Court noted that the Construction Loan Agreement may be properly considered at a later stage of the proceeding.

On January 25, 2013, both parties filed motions for summary judgment attaching multiple exhibits, including the deeds of trust, the promissory notes, and the Construction Loan Agreement, all of which may be properly considered on a motion for summary judgment.

## II. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this Court has the jurisdiction to hear and determine. Pursuant to the analysis in Stern v. Marshall, 564 U.S. --, 131 S. Ct. 2594 (2011), the Court may enter a final order in this matter.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, directs a court to grant a motion for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). A fact is material

if it "might affect the outcome of the suit under the governing law." Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-9 (1986). "A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." Cosey v. Prudential Ins. Co. of Am., --- F.Supp. 2d ---, 2012 WL 4581454, at *4 (M.D.N.C. Sept. 30, 2012) (citing Anderson, 477 U.S. at 248-9). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Celotex, 477 U.S. at 323. The party opposing summary judgment must offer specific facts or objective evidence that a genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-6 (1986). When considering a motion for summary judgment, a court must view the facts, and any reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255; Bryant v. Bell Atl. Md. Inc, 288 F.3d 124, 132 (4th Cir. 2002). When deciding cross motions for summary judgment, a court reviews "each motion separately on its own merits." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

## IV. LEGAL ANALYSIS

A. Motion to Strike

As a preliminary matter, at the hearing on March 7, 2013, the Debtor moved to strike the report of J. Thomas Taylor, a real estate appraiser, offered as Exhibit D by PCB. The Court will grant the motion and strike Exhibit D.

B. First Claim: The Deed of Trust

The Court previously found that North Carolina Law controls the interpretation of the Deed of Trust because the subject property is located in North Carolina. "North Carolina law requires deeds of trust to specifically identify the debt referenced therein." In re Head Grading Co., Inc., 353 B.R. 122, 123 (Bankr. E.D.N.C. 2006). However, there are no specific requirements as to what must

be included to properly identify the debt. Accordingly, with regard to whether the information provided in a deed of trust sufficiently describes the underlying obligation, courts must make a fact specific determination. In re Beckhart, 2011 WL 5902598, at *5 (Bankr. E.D.N.C. July 21, 2011).

Under North Carolina law, incorrect information in a deed of trust as to the date of a promissory note or the parties to a promissory note may render a deed of trust invalid. The Debtor does not argue that the description of the indebtedness contained in the Construction Loan Agreement is defective or insufficient.

A survey of North Carolina case law reveals that, generally, the information included in or omitted from a deed of trust is fatal to the validity of the instrument where it is incorrect and/or misleading. See Head Grading Co., 353 B.R. at 122 (holding a deed of trust invalid where the date on the note differed from the date of note listed on the deed of trust); Putnam v. Ferguson, 130 N.C. App. 95 (1998) (holding a deed of trust invalid where it misidentified the borrower); In the Matter of the Foreclosure of Enderle, 110 N.C. App. 733 (1993) (holding a deed of trust invalid where the name of the borrower on the note differed from the borrower on the deed of trust). However, where the documents contain additional information sufficient to identify the underlying obligation, such omission or misstatement does not necessarily invalidate a deed of trust. See Hutson v. BB&T (In re Wilson), 2013 WL 492851 (Bankr M.D.N.C. Feb. 8, 2013) (holding the deed of trust valid even though the date on the note signed by the borrower stated a different year than the date of the note referenced by the deed of trust); Willows II, LLC v BB&T (In re Willows II, LLC), 2013 WL 139319 (Bankr. E.D.N.C. Jan. 10, 2013) (holding a deed of trust valid even though it listed an incorrect date for the promissory note, based on other "indirect references" made to the note securing the underlying obligation); In re Deuce Invs., Inc., 2011 WL 5902885 (Bankr. E.D.N.C. May 27, 2011) (holding a deed of trust valid despite a vague and ambiguous description of the

property and lack of information regarding future advances where the amount, date, interest rate and maturity date of the note were identified in the deed of trust); In re Williams, 2010 WL 1440892 (E.D.N.C. April 9, 2010) (holding a deed of trust valid despite the omission of the date of the note where the deed of trust listed the same lender information, amount of the debt, identical signatures, interest rate and other terms consistent with the note); Beckhart v. Nationwide Tr. Servs. (In re Beckhart), 2010 WL 1416807 (Bankr. E.D.N.C. Apr. 2, 2010) (holding a deed of trust valid despite listing both spouses, while containing only one spouse's signature and omitting the date, where the lender information, the amount of the debt, the loan number, and mortgage identification number of the note were included).

     Here, the Note is dated May 11, 2007, identifies the Debtor as the borrower and PCB as the lender, states the amount of the loan as $5,000,000.00, provides for a variable rate of interest at 9.25%, and states "Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein a Construction Deed of Trust dated May 11, 2007, to a Trustee in favor of Lender on real property located in Forsyth County." The Deed of Trust, also dated May 11, 2007, identifies the Debtor as the borrower and PCB as the beneficiary, identifies the property it encumbers, and states "This Deed of Trust . . .is given to secure (a) payment of the Indebtedness and (b) performance of any and all obligations under the Note, the Related Documents and this Deed of Trust." The Deed of Trust further states: "the Note secured by this document is specifically identified on the first page of this document." It also states: "Related Documents means all Promissory Notes, Loan Agreements . . . and all other Instruments, Agreements, and Documents executed in connection with the Indebtedness." Additionally, the Deed of Trust refers to "that certain Construction Loan Agreement between Grantor and Lender of even date herewith" and provides for a $5,000,000.00 maximum for future advances.

Upon review of the documents, the Court concludes that, although the Deed of Trust refers to the Note in a manner atypical of deeds of trust generally, it sufficiently describes the parties, the amount of the loan, and the date. The Deed of Trust specifically describes the Construction Loan Agreement, which identifies the variable rate of interest and the $5,000,000.00 obligation. Furthermore, nothing is inconsistent between the Note, the Deed of Trust, and the Construction Loan Agreement; the parties, the amount of the loan, the date, and the variable rate are all the same. The Court finds that nothing in these documents is misleading, deceiving, or confusing. The documents all refer to and support each other. In considering the definitions included in the Deed of Trust and the related documents that it references, the Court concludes that the Deed of Trust specifically identifies the underlying debt that it secures.

C. Second Claim: Personal Property and Fixtures

The parties agree that PCB did not file a UCC-1 financing statement with the North Carolina Secretary of State. Therefore, it is uncontested that PCB does not hold a security interest in the Debtor's personal property. However, PCB did properly file a fixture filing statement in Forsyth County, providing PCB with a security interest in any of the Debtor's property that constitutes a fixture.

The Uniform Commercial Code, as adopted in North Carolina, defines "fixture" as "goods that have become so related to particular real property that an interest in them arises under real property law." N.C. Gen. Stat. § 25-9-102(41) (2007). The determinative factor for whether personal property becomes part of real property is the intent of the parties in annexing the property to the land. Little v. Nat'l. Serv. Indus. Inc., 79 N.C. App. 688, 692 (1986). See also Nationsbank of N.C., N.A. v. Capital Assocs. Int'l., Inc., 916 F. Supp. 549, 553 (1996). In ascertaining intent, North Carolina courts look to "external indicia" including "(1) the relationship of the annexor to the

land[,] . . . the nature of the chattel attached and its relationship or necessity to the activity conducted on the land, and (3) the manner in which the chattel is attached." Little, 79 N.C. App. at 693. Where the owner of the land annexes personal property to the land, a rebuttable presumption arises that the owner's intent was for the personal property to become a fixture, and the burden to prove otherwise lies with the party asserting that it remains personal property. Id. at 692; Oil Co. v. Cleary, 295 N.C. 417, 425 (1978).

Here, both parties assert that there are no material issues of fact in dispute, which the Court explored in detail at oral argument. Notably, the Debtor testified that unless a customer requested an upgrade, the personal property was to remain with the unit. This expressed intent does not materially differ from the intent expressed by PCB that certain property was to remain affixed to the unit. The Court has examined the documents attached to the motions and given particular attention to the most probative evidence, which are the pictures of the items in question. It is within the Court's discretion to make a decision as to what property constitutes a fixture. Accordingly, the Court finds and concludes that the lighting fixtures, wall sconces, ceiling fans, heating and air conditioning units, microwaves, ranges and/or oven units, disposals, dishwashers, and cooling units on the roof are all fixtures that secure the debt owed to PCB. Conversely, refrigerators, exercise equipment, televisions, pictures, washers, dryers, and window treatments are not fixtures and remain personal property not subject to PCB's security interest.

## V. CONCLUSION

Because the Court finds and concludes that the Deed of Trust sufficiently describes the underlying obligation, as to the Debtor's first cause of action, the Court will grant PCB's Motion and deny the Debtor's Motion. With regard to the Debtor's second cause of action, those items that were determined to be fixtures are subject to PCB's security interest, and those items determined

to be personal property are not. Therefore, PCB's Motion and the Debtor's Motion will be granted in part and denied in part.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

END OF DOCUMENT